[Cite as *State v. Stout* , 2014-Ohio-1094.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.  13 MA 30 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| MILBUR STOUT, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:          Criminal Appeal from Common Pleas
                                                        Court, Case No. 11 CR 469.


JUDGMENT:                                        Conviction Affirmed.  Sentence
                                                        Reversed and Remanded
                                                        for Resentencing.


APPEARANCES:
For Plaintiff-Appellee:                          Attorney Paul J. Gains
                                                        Prosecuting Attorney
                                                        Attorney Ralph M. Rivera
                                                        Assistant Prosecuting Attorney
                                                        21 W. Boardman St., 6th Floor
                                                        Youngstown, OH  44503


For Defendant-Appellant:                    Attorney Scott Cochran
                                                        19 E. Front Street, Suite 1
                                                        Youngstown, OH  44503


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                                                        Dated:  March 19, 2014

DeGenaro, P.J.

{¶1}   Defendant-Appellant, Milbur Stout, appeals the March 8, 2013 judgment of the Mahoning County Court of Common Pleas convicting him of two counts of pandering sexually oriented matter involving a minor and two counts of illegal use of a minor in nudity oriented material or performance, and sentencing him accordingly, following an *Alford* plea.   On appeal, Stout raises several sentencing issues.   He claims that he qualified for mandatory community control pursuant to R.C. 2929.13(B)(1)(a) and that the trial court's finding that the offenses caused physical harm to the victims was erroneous. Stout also asserts that the trial court erroneously sentenced him to consecutive sentences without making the findings required by House Bill 86, which is codified as R.C. 2929.14(C)(4).

{¶2}   First, R.C. 2929.14(C)(4) and R.C. 2929.13(B)(1)(a), both as amended by H.B. 86, apply to defendants who committed the offenses before the effective date of the amendments but were sentenced after; thus they also apply to Stout.   Second, the trial court's physical harm finding was erroneous, and therefore the trial court also erred by imposing a prison sentence.   In light of this conclusion, Stout's assignment of error concerning consecutive sentencing is moot.   Accordingly, the judgment of the trial court with regard to Stout's sentence is reversed and the matter remanded for resentencing.

## Facts and Procedural History

{¶3}   On May 5, 2011, a grand jury indicted Stout on two counts of pandering sexually oriented matter involving a minor, R.C. 2907.322(A)(5)(C), fourth-degree felonies, and four counts of illegal use of a minor in nudity oriented material or performance, R.C. 2907.323(A)(3)(B), fifth-degree felonies.   Stout was charged after photographs were found in Stout's former apartment and business property by the new owners after they purchased the property at a sheriff's sale.   Stout was arraigned, pled not guilty, retained counsel and executed a speedy-trial waiver.

{¶4}   After lengthy plea negotiations broke down, the State filed a superseding indictment on October 18, 2012, adding 40 additional counts: 10 counts of pandering obscenity involving a minor, R.C. 2907.321(A)(1)(C), second-degree felonies; 10 counts of pandering sexually oriented matter involving a minor, R.C. 2907.322(A)(1)(C), second-

degree felonies; 10 counts of pandering obscenity involving a minor, R.C. 2907.321(A)(1)(C), fourth-degree felonies; and 10 counts of pandering sexually oriented matter involving a minor, R.C. 2907.322(A)(5)(C), fourth-degree felonies. All counts from the original indictment remained, making a total of 46 counts. The new charges stemmed from images found on computer hard drives and disks that belonged to Stout. Stout waived arraignment on the new charges and entered a written plea of not guilty. On November 28, 2012, Stout filed a motion to dismiss, arguing that all the charges were based on events and activities outside the six-year statute of limitations for felonies.

{¶5} Before the trial court could rule on the motion to dismiss, on January 30, 2013, Stout entered an *Alford* Plea to two counts of pandering sexually oriented matter involving a minor, (R.C. 2907.322(A)(5)(C)), fourth-degree felonies, and two counts of illegal use of a minor in nudity oriented material or performance, R.C. 2907.323(A)(3)(B), fifth-degree felonies (Counts One through Four of the superseding indictment). *See generally North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *State v. Griggs*, 103 Ohio St.3d 85, 814 N.E.2d 51, 2004-Ohio-4415, ¶13. The State agreed to dismiss the remaining 42 counts and recommend a 5 year prison sentence (maximum, consecutive on each count.) The trial court ordered a presentence investigation report be prepared in advance of sentencing.

{¶6} On March 6, 2013, a sentencing hearing was held. Both the State and Stout stipulated that "there is no presumption for or against the Defendant going to prison, that this is something basically the Court will consider on the facts and the circumstances presented in this case." The State argued for a five-year prison sentence, instead of community control, contending that the physical harm exception in R.C. 2929.13(B)(1)(b)(ii) applied because "there is physical harm when child pornography is viewed." The State also argued that Stout's sex offender risk assessment lacked reliability in that some of Stout's responses were found to be invalid. The State also contended that Stout's clinical profile depicted him as someone who was narcissistic, immature, self-indulgent and tended to view himself as a victim. Stout argued that his mere possession of the images did not cause "physical harm" to the children depicted

and thus R.C. 2929.13(B)(1)(b)(ii) did not apply to him. Stout noted that his only past convictions were OVI's and that his sex offender risk assessment found he was an appropriate candidate for community control.

{¶7} Stout also made a statement in mitigation of punishment. Stout explained that he was the victim of sexual abuse as a young child, estimating that he was raped between 50 and 100 times and was subjected to other acts of sexual violence. He also explained that his father physically abused him from the time that he was 7 or 8 years old until the time that he was 15. He said that in late 1990's he began to collect images of child pornography out of anger over the sexual abuse he suffered as a child. He claimed he planned to turn over the images to the authorities; however, he later decided to stop collecting the pictures and abandoned his plan. Stout argued that his attempts to shred the pictures and throw them away were attempts to dispossess the material. He said he deleted the files on his computer and did not know that they could be recovered from the unallocated disk space on his hard drive.

{¶8} After considering the information presented at the hearing, the sex offender risk assessment, the letters of support written by Stout's family, the PSI and after reviewing the images themselves, the trial court sentenced Stout to 18 months on Counts One, 18 months on Count Two, 12 Months on Count Three, and 12 months on Count Four. The trial court ran Counts One and Two concurrent with one another, Counts Three and Four concurrent with one another, but Counts Three and One consecutive to one another, for a total of 30 months in prison. The trial court imposed a mandatory term of 5 years of post-release control. Stout was also fined $500 and classified a Tier II sex offender.

### Applicability of H.B. 86

{¶9} For clarity of analysis, we must first determine if R.C. 2929.13(B) and R.C. 2929.14(C), as amended by H.B. 86, applies to Stout, because he challenges the trial's decision to impose consecutive prison terms instead of mandatory community control. Stout committed the crimes at issue on March 30, 2011, before the effective date of H.B. 86, but was sentenced on March 22, 2013, well after the effective date. The mandatory

community control provisions in R.C. 2929.13(B) and the additional requirements of R.C. 2929.14(C)(4) to be considered when a trial court imposes consecutive sentences, were enacted as part of House Bill 86.

**{¶10}** Section 4 of H.B. 86 provides (emphasis added):

The amendments to sections 926.99, 1333.99, 1707.99, 1716.99, 2909.03, 2909.05, 2909.11, 2913.02, 2913.03, 2913.04, 2913.11, 2913.21, 2913.31, 2913.32, 2913.34, 2913.40, 2913.401, 2913.42, 2913.421, 2913.43, 2913.45, 2913.46, 2913.47, 2913.48, 2913.49, 2913.51, 2913.61, 2915.05, 2917.21, 2917.31, 2917.32, 2921.13, 2921.41, 2923.31, and 2981.07, *division (B) of section 2929.13,* and division (A) of section 2929.14 of the Revised Code that are made in this act apply to a person who commits an offense specified or penalized under those sections on or after the effective date of this section *and to a person to whom division (B) of section 1.58 of the Revised Code makes the amendments applicable.*

**{¶11}** R.C. 1.58(B) provides: "If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." Thus, in order for the amendments R.C. 2929.13(B) and R.C. 2929.14(C) to apply to Stout, H.B. 86 would have had to reduce the applicable penalty, forfeiture or punishment.

**{¶12}** Turning first to the changes in R.C. 2929.13(B) and imposing community control versus a prison term, there are no cases on point discussing this issue; however, a very recent Ohio Supreme Court case is somewhat instructive, as it involves another statute affected by H.B. 86, R.C. 2913.02, which reduced the degree, and therefore the penalty, for certain theft offenses. *State v. Taylor*, Slip Opinion No. 2014-Ohio-460. In *Taylor*, the Ohio Supreme Court held that a defendant who committed the crime before the effective date of H.B. 86, but was sentenced after, was entitled to receive the reduced

classification and penalty for the theft offense as provided by H.B. 86's amendments to R.C. 2913.02, through the operation of R.C. 1.58. *Id.* at ¶17-21.

**{¶13}** The present case involves R.C. 2929.13(B), which mandates community control for fourth and fifth degree felons in some situations. This is somewhat analogous to the situation in *Taylor*. Mandating community control for fourth and fifth degree felons in some situations constitutes a "reduction in penalty or punishment" sufficient to trigger the application of R.C. 1.58(B). Moreover, in *State v. Esmail*, 7th Dist. No. 11 CO 35, 2013-Ohio-2165, albeit without discussion, this court applied H.B. 86's amendments to R.C. 2929.13(B) to a defendant who committed the crimes before September 30, 2011, but was sentenced after. *Id.* at ¶3-5, 32-37.

**{¶14}** Turning next to R.C. 2929.14(C)(4), as amended by H.B. 86, in a string of recent cases, this court applied the H.B. 86 consecutive sentencing provisions where the defendant committed the crimes before the effective date of the statute but was sentenced after. *See State v. Power*, 7th Dist. No. 12 CO 14, 2013-Ohio-4254, ¶2-4, 33-77; *State v. Esmail*, 7th Dist. No. 11 CO 35, 2013-Ohio-2165, ¶3-8, 15; *State v. Farnsworth*, 7th Dist. No. 12 CO 10, 2013-Ohio-1275, ¶1-3, 7; *State v. Galindo-Barjas*, 7th Dist. No. 12 MA 37, 2013-Ohio-43, ¶3, 6, 13. However, in none of these cases was the panel presented with the question directly as it has been presented here: where the defendant committed the crimes before the effective date of the statute, which version of 2929.14(C) applies.

**{¶15}** However, in one case, as part of an *Anders/Toney* review, *State v. Pete*, 7th Dist. No. 12 MA 36, 2013-Ohio-663, ¶19, fn. 1, this court mentioned in a footnote that R.C. 2929.14(C)(4) would not apply to such a situation. Excepting *Galindo-Barjas*, *Pete* was decided prior to all of the above cases from this district, and thus arguably reversed sub silentio by *Power, Esmail* and *Farnsworth*, Further, at least one district has called into question the rationale in the *Pete* footnote. In *State v. Venes*, 8th Dist. No. 98682, 2013-Ohio-1891, the Eighth District explained:

> We acknowledge that the court in *State v. Pete*, 7th Dist. No. 12 MA

36, 2013-Ohio-663, 2013 WL 749374, found that the trial court did not have to apply the law in effect at the time of sentencing. In *Pete,* the court acknowledged that R.C. 2929.14(C)(4) had been amended and was in effect at the time Pete was sentenced. Nevertheless, it stated:

> The General Assembly expressly provided in Section 4 of H.B. 86: "The amendments * * * apply to a person who commits an offense specified or penalized under those sections on or after the effective date of this section[.]" Pete committed the offense on August 18, 2011. Thus, the trial court was not required to make the consecutive sentence findings prior to sentencing Pete to consecutive sentences.
>
> *Id.* at ¶19, fn. 1.

In reaching this conclusion, the Seventh District Court of Appeals failed to recognize that the language it quoted from Section 4 of H.B. 86 applied only to "division (A) of section 2929.14 of the Revised Code." In other words, the felony penalties set forth in R.C. 2929.14(A) apply to those persons who commit an offense after September 30, 2011—the effective date of the section. Nothing in Section 4 can be understood as indicating that it applies to anything other than R.C. 2929.14(A), and more particularly, that the consecutive sentencing requirements of R.C. 2929.14(C)(4) apply only to those offenders who committed their crimes after the effective date of the statute. Consistent with *Jones* and *Huber*, [*State v. Jones*, 8th Dist. No. 98371, 2013-Ohio-489; *State v. Huber*, 8th Dist. No. 98206, 2012-Ohio-6139] we find that the consecutive sentencing provisions of H.B. 86 are effective for all offenders sentenced on or after September 30, 2011, regardless of when those offenders committed their crimes.

*Venes* at ¶3-4.

**{¶16}** Other districts have also applied the consecutive sentencing provisions in R.C. 2929.14(C)(4), as amended by H.B. 86, where the defendant was sentenced after the effective date, notwithstanding the fact that the offenses were committed before the effective date. For example, in *State v. Wilson*, 10th Dist. No. 12AP–551, 2013-Ohio-1520, the Tenth District held that because the "the penalty or punishment for the offenses might arguably be reduced if the trial court were required to make the findings required by R.C. 2929.14(C)(4) before imposing consecutive sentence," then pursuant to R.C. 1.58(B), the consecutive sentencing provisions of H.B. 86 applied to a defendant who was sentenced after, but committed the offenses before, the effective date of the statute. *Wilson* at ¶14-17. *See also State v. Clay*, 4th Dist. No. 11CA23, 2013-Ohio-4649, fn. 2 (Fourth District citing *Wilson* with approval); *State v. Johnson*, No. 2012 CA 00054, 2012-Ohio-5621, ¶39, citing *State v. Williams*, 5th Dist. No. 11–CA–115, 2012-Ohio-3211: ("a defendant who committed his crime before the effective date of H.B. 86 but was sentenced after the effective date could not be sentenced to consecutive sentences in the absence of the judicial findings of fact mandated by R.C. 2929.14(C)."); *State v. Jones*, 1st Dist. No. C–110603, 2012-Ohio-2075, ¶17-23 (applying consecutive sentencing provisions of H.B. 86, when offenses were committed before effective date of the statute, and defendant was sentenced after.)

**{¶17}** Not only are we persuaded by the analysis of our sister districts, more importantly, we must remain consistent with this court's most recent jurisprudence on the subject, i.e., *Esmail, Power*, and *Farnsworth.* Accordingly, we hold that the consecutive sentencing provisions of H.B. 86 apply to criminal defendants who were sentenced on or after September 30, 2011, including those who committed the sentenced offenses before that date. Moreover, we expressly overrule that portion of our decision in *Pete* which holds otherwise.

**{¶18}** Accordingly, for all of the above reasons, the community control provisions in R.C. 2929.13(B) and the R.C. 2929.14(C)(4) consecutive sentencing requirements do

apply to Stout.

{¶19} Stout raises three assignments of error in this appeal as follows:

{¶20} "The record does not support the trial court's findings under O.R.C. 2929.13(B) and the sentence is clearly and conveincingly (sic) contrary to law."

{¶21} "The finding that the appellant caused 'physical harm' to any individual while committing the offense was an abuse of discretion."

{¶22} "The decision to impose consecutive sentences is contrary to law."

{¶23} For clarity of analysis, we will reframe Stout's assignments of error. First, Stout asserts that the trial court erred by finding that he caused physical harm by mere possession of the images; and in the absence of the physical harm element the trial court was mandated by R.C. 2929.13(B)(1) to impose a community control sanction. Second, Stout asserts the trial court exacerbated the sentencing error by imposing consecutive prison terms.

### Failure to Impose Community Control

{¶24} Stout contends that community control was mandatory under the circumstances of this case pursuant to R.C. 2929.13(B)(1), because the State failed to establish that mere possession of the images caused physical harm as defined by Ohio's criminal code. The version of R.C. 2929.13(B)(1) in effect at Stout's sentencing provided:

(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence, the court shall sentence the offender to a community control sanction of at least one year's duration if all of the following apply:

(i) The offender previously has not been convicted of or pleaded guilty to a felony offense or to an offense of violence that is a misdemeanor and that the offender committed within two years prior to the offense for which sentence is being imposed.

(ii) The most serious charge against the offender at the time of

sentencing is a felony of the fourth or fifth degree.

(iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(b) The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence if any of the following apply:

(i) The offender committed the offense while having a firearm on or about the offender's person or under the offender's control.

(ii) The offender caused physical harm to another person while committing the offense.

(iii) The offender violated a term of the conditions of bond as set by the court.

(iv) The court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, and the department, within the forty-five-day period specified in that division, did not provide the court with the name of, contact information for, and program details of any community control sanction of at least one year's duration that is available for persons sentenced by the court.

**{¶25}** There is no dispute that Stout has not previously been convicted of or pleaded guilty to a felony offense or to an offense of violence that is a misdemeanor committed within two years prior to the offenses at issue here.  Nor can there be any dispute that the most serious charge against Stout at the time of sentencing was a fourth or fifth degree felony.  *See* R.C. 2929.13(B)(1)(a).  He was convicted of two fourth-degree felonies and 2 fifth-degree felonies.

**Physical Harm**

{¶26} Thus at issue here is the application of subsection (b)(ii), whether the "offender, [Stout], caused *physical harm* to another person while committing the offense." R.C. 2929.13(B)(1)(b)(ii) (emphasis added.) The trial court reviewed the images and found they "depicted many pictures of children in different sexual activities while nude" and that "each prior showing of the minor children was an act which created physical harm to the children pictured." Based upon these findings, the trial court sentenced Stout to prison instead of imposing a community control sanction.

{¶27} As an initial matter, as both parties note, R.C. 2929.13(B)(1)(b) was amended after Stout's sentencing to include more situations where the trial court has the discretion, rather than was mandated, to sentence a fourth and fifth degree felon to community control, including where "the offense is a sex offense that is a fourth or fifth degree felony violation of any provision of Chapter 2907 of the Revised Code." *See* R.C. 2929.13(B)(1)(b)(v), as amended by S.B. 160, effective March 22, 2013. In other words, the amended statute adds additional exceptions to the rule that community control is mandatory for fourth and fifth degree felonies. Those exceptions, as expanded to now include offenses such as those committed by Stout, vest trial courts with the discretion to impose either a prison term or community control for those specified offenses. Each side draws an opposite conclusion from the legislature's addition of this language and its meaning for purposes of applying the statute as it was in effect at the time of Stout's sentencing.

{¶28} However, this court can only apply the law as written at the time of Stout's sentencing, since the statutory language employed by the General Assembly is clear and unambiguous. *See Silver Lake v. Metro Regional Transit Auth.*, 111 Ohio St.3d 324, 2006-Ohio-5790, 856 N.E.2d 236, ¶17, quoting *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000): "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation."

{¶29} On appeal, as at sentencing, the State asserted that there is physical harm

to the victim whenever child pornography is possessed and viewed as contemplated by R.C. 2929.13(B)(1)(b)(ii), relying upon *State v. McCartney*, 12th Dist. No. CA2003-09-023, 2004-Ohio-4781. In *McCartney,* the defendant was charged with violating R.C. 2907.322(A)(5), possessing sexually oriented material involving minors, and the trial court there made the physical harm finding in the context of imposing prison instead of community control, pursuant to an earlier version of R.C. 2929.13(B)(1). The physical harm finding was affirmed by the Twelfth District on appeal, *McCartney* at ¶49, and the State urges this court to follow *McCartney* in the present case.

**{¶30}** In concluding that there is physical harm to the victim whenever child pornography is possessed and viewed, the Twelfth District stated that " '[b]oth the Supreme Courts of the United States and Ohio have unequivocally found that children are seriously harmed by the mere possession of pornography in which they are depicted.' " *Id.* at ¶47, quoting *State v. Maynard*, 132 Ohio App.3d 820, 827, 726 N.E.2d 574 (9th Dist.1999), citing *State v. Meadows*, 28 Ohio St.3d 43, 503 N.E.2d 697 (1986), citing *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Thus, the Twelfth District agreed that the defendant "caused serious harm to several persons by possessing graphic images of those minors depicted in sexual activity." *McCartney* at ¶47.

**{¶31}** However, the problem with *McCartney* is that the cases upon which it relies do not directly stand for the proposition that *possession* of child pornography causes *physical* harm to the victims as contemplated and defined by the Ohio criminal code, which distinguishes between physical and psychological harm. *Maynard* held that children depicted in pornographic images were "victimized" by the possession under the meaning of former R.C. 2950.09(B)(2)(d) and (h), but did not state that those victims suffered *physical* harm. *Id.* at 827-829.

**{¶32}** Significantly, both *Meadows* and *Ferber* involve *First Amendment* challenges to criminal statutes involving child pornography. *Ferber*, 458 U.S. 747; *Meadows*, 28 Ohio St.3d 43. These cases discuss at length government policy rationales in support of the constitutionality of child pornography statutes. *Ferber* discussed the

government's interest in eradicating child pornography, noting that the "use of children as subjects of pornographic materials is harmful to the physiological, emotional and mental health of the child." *Id.* at 758. Further, the Court noted that child pornography is related to child sexual abuse in that "the harm to the child is exacerbated by * * * circulation" of the materials. *Id.* at 759. In *Meadows*, the court emphasized that "child pornography involves, by its nature, the physical, mental and sexual abuse, seduction and harmful exploitation of children." *Id.* at 50.

{¶33} Unquestionably, possession of child pornography is not a victimless crime and causes *psychological* harm to the victims. *See Meadows, Maynard, Ferber.* However, to say it causes *physical harm* to the victims as defined by the Revised Code is more tenuous. While *Ferber* and *Meadows* articulate a sound policy rationale in support of the constitutionality of child pornography laws, those decisions do not necessarily support the conclusion that a child who is depicted in pornography suffers physical harm, as defined by Ohio law, specifically as used in R.C. 2929.13(B)(1)(b)(ii). In fact, *Meadows* and *Ferber* identify emotional, mental and psychological harm as distinct from physical harm, all of which flow from child pornography. Ohio law similarly distinguishes between physical and psychological harm.

{¶34} Ohio's Criminal Code, set forth in Title 29 of the Ohio Revised Code defines physical harm as follows: "*As used in the Revised Code* * * * any injury, illness, or other physiological impairment, regardless of its gravity or duration." (Emphasis added.) R.C. 2901.01(A)(3). On the other hand, psychological harm, as contemplated by the First Amendment analysis in *Meadows* and *Ferber,* was distinguished from the statutory definition of physical harm by the Second District as follows:

> "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). In adopting this definition, the Legislative Service Commission commented that "while physical illness is included in the concept of physical harm to persons, mental illness is not. Serious mental conditions are reserved for

the definition of serious physical harm to persons, but the milder mental disturbances cannot be pinpointed with sufficient precision for use in the criminal law." A psychological effect on the victim does not fall within the statutory definition of "physical harm." *State v. Dawson* (1984), 16 Ohio App.3d 443, 16 OBR 515, 476 N.E.2d 382; *State v. Collier,* Montgomery App. No. 20131, 2005-Ohio-119, 2005 WL 78548, ¶ 61. Therefore, the "less serious" factor that "the offender did not cause or expect to cause physical harm to any person or property" is present.

*State v. Nichols*, 195 Ohio App.3d 323, 2011-Ohio-4671, 959 N.E.2d 1082, ¶28 (2d Dist.).

**{¶35}** Moreover Ohio's sentencing statutes are replete with distinctions between physical and psychological harm. Just one example is found in one of the seriousness factors courts consider when sentencing a felon: "The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." R.C. 2929.12(B)(2).

**{¶36}** Here, Stout contested the physical harm finding at sentencing and there is nothing in the record demonstrating that the children portrayed in the images suffered physical harm. In other words, there was nothing to prove the victims suffered "any injury, illness, or other physiological impairment[,]" by Stout's mere *possession* of the images. R.C. 2901.01(A)(3).

**{¶37}** The trial court and this court are bound to apply the law in effect at the time of Stout's sentencing. Because the General Assembly limited subpart (b)(ii) to considering whether the defendant caused physical harm, neither the trial court nor this court can consider psychological harm. These two terms have separate and distinct statutory definitions, and we are bound to give unambiguous statutory language the plain meaning assigned to it by the General Assembly. In order for Stout to receive a sentence other than community control, physical harm to the victim had to be present. Solely *possessing and viewing* child pornography does not per se cause physical harm to the victim, although it unquestionably causes the victim emotional, mental and psychological

harm. That said, if the facts were different and Stout was charged with *taking the pictures and directing the children*, physical harm could be found. However, we do not have those facts in this case; the offense here involves only *possession*.

**{¶38}** While this court may disagree with the language of R.C. 2929.13(B)(1)(b) which required a showing of physical harm but provides for no consideration of the psychological harm that re-publication and possession of this material causes the victim, we are constrained by the plain language of the statute. Constitutional delegation of authority and separation of powers dictate that the legislature, not the courts, is the branch empowered to amend clear and unambiguous statutory language. Apparently the Ohio General Assembly must have deemed the language problematic; as noted above, it recently amended R.C. 2929.13(B)(1)(b) to now grant trial courts the discretion to impose a prison sentence for crimes such as the one committed by Stout. Had that amendment been in effect when Stout was sentenced, clearly the trial court would have been acting within its discretion to sentence Stout to prison. However, it was not; thus, the trial court was mandated to impose community control. While this court may disagree with such limitation on the trial court's discretion, we are bound by the plain language of R.C. 2929.13(B)(1)(b) that was in effect at the time of Stout's sentencing.

**{¶39}** The trial court's physical harm finding was erroneous; thus, it was also erroneous for the trial court to impose a prison sentence. The version of R.C. 2929.13(B)(1) in effect at the time of Stout's sentencing mandates a community control sanction under these circumstances. Accordingly, Stout's first and second assignments of error are meritorious. In light of this conclusion Stout's third assignment of error asserting the trial court erred by imposing consecutive sentences is moot and we decline to address it. App.R. 12(A)(1)(c).

**{¶40}** In sum, R.C. 2929.14(C)(4) and R.C. 2929.13(B)(1)(a), both as amended by H.B. 86, apply to defendants who committed the offenses before the effective date of the amendment but were sentenced after; thus they also apply to Stout. The trial court's physical harm finding was erroneous, and therefore the trial court also erred by imposing a prison sentence. Accordingly, the judgment of the trial court with regard to Stout's

sentence is reversed and the matter remanded for resentencing.

Donofrio, J., concurs.

Vukovich, J., concurs.